## Higginson *v.* Fireman's Fund Insurance Co., Appellant.

Argued March 25, 1958. Before RHODES, P. J., GUNTHER, WRIGHT, WOODSIDE, ERVIN, and WATKINS, JJ. (HIRT, J., absent).

Before BONNELLY, J.

*Albert L. Bricklin,* with him *Bennett & Bricklin,* for appellant.

*Mervin J. Hartman,* with him *Busser & Bendiner;* for appellees.

Opinion by Watkins, J., June 11, 1958:

This is an action in assumpsit, based on the provisions of an extended coverage endorsement of a fire insurance policy, insuring the appellees from damage suffered by windstorm.

The appellee, Lois Higginson, testified that on the morning of October 11, 1954 the brick chimney attached to her dwelling was erect and in good condition. When she returned from work that evening she found a gaping hole in the kitchen roof and debris from the chimney strewn throughout the kitchen. The contractor who repaired the damage testified that "the chimney had fallen or had been blown" through the kitchen roof causing the damage. He also testified that "it wasn't brand new and it wasn't probably old, but it was of average age." The appellees offered into evidence a certified copy of the weather report for the date of the accident indicating that the wind velocity for that date was 18 miles per hour with gusts of 22 miles per hour.

The appellant insurance company offered testimony that the chimney collapsed from corrosion of the bricks as a result of old age and depreciation.

The jury returned a verdict for appellees for $597 and after motions by the appellant for a new trial and judgment non obstante veredicto were dismissed by the court below, this appeal followed.

The appellant complains generally of the court's action in submitting the case to the jury and specifically of the instruction to the jury that "Any wind, strong and sustained enough to damage the insured property, is a 'windstorm' within the meaning of the term as used in the policy and within the contemplation of the parties."

The extended coverage provision reads as follows: "The coverage of this policy is extended to include di-

rect loss by windstorm". We agree with the court below that this case is governed by *Adams Apple Products Corp. v. National Union Fire Insurance Company,* 170 Pa. Superior Ct. 269, 85 A. 2d 702 (1952), where it was held that actions by the insured to recover for damage to property alleged to have been caused by windstorm, in which it appears that there has been no eyewitness to the actual fall of the structure involved and where defendant insurer produced testimony to show that there had been no wind capable of damaging property during the time involved, and that the damage to the plaintiff's property was the result of structural defects, the court properly submitted the case to the jury.

The court below was guided in its charge to the jury by this language contained in *Adams Apple Products Corp. v. National Union Fire Insurance Company,* supra, at page 275. "It seems to us that any wind, strong and sustained enough to damage the insured property, is a 'windstorm' within the meaning of the term as used in the policies and within the contemplation of the parties. In a well reasoned case, Gerhard v. Travelers Fire Insurance Co., 246 Wis. 625, 18 N.W. 2d 336, the Wisconsin court had this to say: 'In the absence of definition or limitation in the policy, we think that a windstorm must be taken to be a wind of sufficient violence to be capable of damaging the insured property either by its own unaided action or by projecting some object against it. This is especially true where, as here, the more violent forms of windstorm [tornado and hurricane] are specifically named as something different from a mere windstorm'. This language was quoted with approval in Fidelity-Phenix Ins. Co. v. Board of Ed., of Town of Rosedale, 201 Okla. 250, 204 P. 2d 982, in which case it was added: 'Concerning the purpose of the coverage and the field

of the risk, it would seem that any wind that is of such extraordinary force and violence as to thereby injuriously disturb the ordinary condition of the things insured is tumultuous in character, and is to be deemed a windstorm within the purview of the policy, in absence of a provision therein to the contrary' ". See also: *Trexler Lumber Co. v. Allemannia Fire Insurance Co.*, 289 Pa. 13, 136 A. 856 (1927).

As was said by the court below "The insurance company defendant saw fit to use the term 'windstorm' without any definition whatsoever. We think that gusts of wind reaching a velocity of twenty-two miles per hour are high winds, which can be characterized as a windstorm, and if they cause damage to property, such damage is covered by an extended coverage provision such as the one in the policy".

The judgment is affirmed.