BOLIN, Judge.
From judgment in favor of Mrs. Don Clemmie Carnes against Continental Casualty Company in the sum of $25,000 for the accidental death of her husband Continental appeals.
The suit was based on the following provision of the insurance policy:
“ ‘Injury’ wherever used in the policy means bodily injury caused by an accident occurring while the policy is in force as to the insured person and resulting directly and independently of all other causes in loss covered by the policy.”
The issue is whether plaintiff has proved by a preponderance of evidence that Mr. Carnes’ death was due to an accident as defined in the policy of insurance.
Mr. Carnes, who resided in the suburbs of Shreveport, Louisiana, came home on the afternoon of April 13, 1965, in order to work in his garden. After putting on his work clothes he turned on the attic fan which drew insects from outside into the house due to a screen door having been left open. On April 14 he again desired to work in his garden. On this occasion he put on some nylon mesh shoes which he obtained from the floor of a closet in the house. After working in the garden he took a bath, ate his evening meal and went to bed. While eating breakfast on April 15 he became nauseated and had a slight temperature. He went to bed and his wife called their family physician, Dr. W. J. Hill, Jr. Dr. Hill did not think there was anything seriously wrong with Mr. Carnes but gave him medication and told him to contact him the next day if he did not improve. Carnes failed to improve and was again examined by Dr. Hill on April 16, at which time the patient told his physician he had been bitten on the left foot by an insect. His foot was red and swollen and he was given antibiotics to prevent infection. On April 17 he was again examined at his home by Dr. Hill who found little change in the patient’s condition. On April 18 Dr. Hill became concerned about his patient’s failure to improve and caused him to be admitted to a local hospital.
Dr. Paul Winder, dermatologist of Shreveport, was called in by the family physician to examine Mr. Carnes. Dr. Winder, being of the opinion Carnes had been bitten by a brown recluse spider, began giving him injections of steroid medication. While treating Mr. Carnes for the insect bite it was discovered he had a staphylococcus infection, which is generally caused by bacteria entering the body through an opening in the skin.
Mr. Carnes died in the hospital on May 18, 1965, from endocarditis, which was conceded to be directly due to the spreading of the ‘staph’ infection through his bloodstream reaching his heart and blocking a valve.
In addition to the testimony of Doctors Hill and Winder the medical evidence consisted of the testimony of Dr. Joe E. Ho-loubek, an internist of Shreveport, and Dr. Calvin J. Dillaha, a dermatologist of Little Rock, Arkansas.
As the direct cause of death was from endocarditis the issue may be narrowed to the question of whether the deceased was bitten by a spider and whether the ‘staph’ infection entered the bloodstream through the puncture caused by the spider bite. If this be shown there can be no argument that death resulted from an “accident” under the insurance policy.
The phrase “resulting directly and independently of all other causes” has been interpreted to mean the predominate cause of the death. The burden is upon the claimant to prove by a preponderance of evidence that an accident was the predominate cause of death. Franklin v. Mutual Life Ins. Co. of N. Y., 216 La. 1062, 45 So.2d 624 (1950) and cases cited therein.
We shall briefly set forth our appreciation of the medical testimony. Dr. Hill, *443 the treating physician, was definitely of the opinion Carnes was bitten by a brown recluse spider and that the ‘staph’ entered the body through the bite ultimatedy causing his death. He reached this conclusion by eliminating every other reasonable source for the entry of the infection into decedent’s body. He testified he was certain of the cause of death.
Dr. Winder was reasonably certain Carnes was bitten by a spider due to several symptoms and developments which were peculiarly related to a brown recluse spider bite. He was likewise of the opinion the ‘staph’ probably entered the body by means of the spider bite.
Dr. Dillaha was a nationally recognized specialist in regard to recognition of the bite of the brown recluse spider and treatment therefor. His deposition was most enlightening. Although he never examined Carnes he testified at length in answer to hypothetical questions. He explained that the normal habitat of the brown recluse spider is indoors and on many occasions has been found in clothing and shoes. He also testified the bite usually causes little initial pain and the victim does not realize he has been bitten. He believed the ‘staph’ infection could enter the body by means of a brown recluse spider bite. From hypothetical questions, which were based on facts which we find have been established, it was his opinion that death was probably due to the brown recluse spider bite.
The only substantial conflicting medical testimony was that of Dr. Holoubek. He stated the ‘staph’ infection was very common and its entrance into the body would not likely be gained through the small puncture made by a brown recluse spider bite.
While no one saw the spider bite Mr. Carnes nor were any of the experts able to testify with absolute certainty that the ‘staph’ infection entered the body through the spider bite, the circumstantial evidence is so strong as to preclude any other reasonable hypotheses.
We think plaintiff has proved her case by a preponderance óf the evidence. The accepted treatment for the brown recluse spider bite is injection of steriods, but this treatment, which was received by Mr. Carnes, also lowered the patient’s resistance to the subsequent ‘staph’ infection allowing it to diffuse into the bloodstream and cause his death.
The judgment is affirmed at appellant’s cost.