**Thomas J. QUALLS, Appellant,**

v.

**FARM BUREAU MUTUAL INSURANCE COMPANY, a Corporation, Appellee.**

No. 54225.

Supreme Court of Iowa.

March 11, 1971.

Miller, Miller & Miller, of Cherokee, for appellant.

Kindig, Beebe, McCluhan & Rawlings, Sioux City, for appellee.

LARSON, Justice.

Seeking recovery for the loss of fourteen heifers that died of pseudorabies, plaintiff brought suit against the defendant Farm Bureau Mutual Insurance Company asking judgment declaring liability for the loss

under the provisions of his policy. Although defendant objected, the matter was tried as an equity matter, and it is agreed our review here is de novo.

The trial court recognized the policy held by plaintiff extended coverage to loss of livestock by "attack by dogs or wild animals" and found that "it is reasonable to conclude that plaintiff's heifers died from Aujeskey's Disease inflicted by a bite of a wild animal, directly to the heifers or indirectly by biting the hogs who in turn were carriers and bit the cattle, inflicting the fatal disease." However, the court held "that the insured, as a reasonable person, could not have understood his policy to cover such a situation, when the only peril insured against was 'attack by dogs or wild animals'" and dismissed plaintiff's petition. Plaintiff appeals. We reverse.

This appeal presents two principal issues: (1) Did plaintiff's claimed loss fall within the coverage provision of the policy of insurance against loss of livestock? (2) Was the evidence sufficient to sustain a finding that the loss resulted from an attack by dogs or wild animals?

■ I. Appellee concedes that the cardinal principle applicable to the construction of written contracts is that the parties' intent shall control. It also concedes that a contract of insurance should be interpreted from the standpoint of an ordinary man's viewpoint, not a specialist or expert. See Bates v. United Security Ins. Co., Iowa, 163 N.W.2d 390, 397.

Appellee does not question the sufficiency of the diagnosis of the disease suffered by the dead cattle, nor seriously question Dr. Drefke's qualifications to render an opinion as to how it was contracted. It is true, direct evidence of a vicious attack or bite was not found upon the animals, but the explanation was reasonable that, when the affected animals were discovered, their efforts to relieve the itch had already destroyed any certain evidence of an attack.

■ Appellant contends the provision establishing liability for loss of livestock through an attack by dogs or wild animals was intended to include all losses which were proximately caused by such attacks, and that by a preponderance of the evidence he did show the fatal disease suffered by these heifers was the proximate result of a bite of a diseased wild animal. He contends the rule of construction applicable to the policy of insurance at issue is the intent of the parties as determined by what the contract itself says and the extent and meaning given by law to the language used in such contracts. Thus, if an attack by a wild animal is shown, he maintains that the loss of the livestock by contracting a fatal disease as a result of a bite from an infected wild animal is recognized as the proximate cause of the loss and is covered by the policy. As authority for this position he cites Ballagh v. Interstate Acc. Assn., 176 Iowa 110, 155 N.W. 241. Also see 45 C.J.S. Insurance § 756, p. 785, and § 890, p. 963.

Apparently the trial court believed the policy restricted the loss to a direct or immediate loss due to the attack of dogs or wild animals, and concluded it did not include infectious consequences such as appear herein. In so doing, we think the trial court erred.

We are satisfied the word "attack" as used in the instant insurance agreement clearly extended to those results which were proximately caused thereby and, regardless of the seriousness or extent of the attack, any bite which was found to infect the livestock with a serious disease is included in the liability assumed under the contract. There was no provision in the contract which restricted the loss to violence causing the death of the animals.

It is, of course, true that "In order that there may be a recovery on the policy the loss of, or injury to, the insured livestock must result from the particular peril against which insured is indemnified." 45 C.J.S., § 890, supra. Clearly, the peril insured

against here is attacks by dogs or wild animals. Thus, every loss to plaintiff's livestock which is the proximate result of an attack by wild animals, except that from fright (specifically excluded), must be considered within the intent of the parties to this insurance contract. It is said in section 890 of 45 C.J.S. Insurance, at p. 963, "A policy of livestock insurance covers all losses falling within its terms, such as death or injury of an animal proximately resulting from the risk insured."

■ In insurance law it is generally understood that where the peril insured against sets other causes in motion which, in an unbroken sequence and connection between the act and final loss, produces the result for which recovery is sought, the insured peril is regarded as the proximate cause of the entire loss. See Insurance Law and Practice, Appleman 5, § 3083, p. 309, and citations; Bates v. United Security Ins. Co., supra. Also see Carnes v. Continental Casualty Co. (La.App.), 212 So.2d 441, where the court allowed recovery for insured's death when endocarditis occurred as a result of a spider bite and held the death was the result of an accident under the terms of the policy.

In Ballagh v. Interstate Acc. Assn., supra, we ourselves reached a like conclusion and, in reaffirming our previous holding in Delaney v. Modern Accident Club, 121 Iowa 528, 97 N.W. 91, quoted this statement at page 116 of 176 Iowa, at page 243 of 155 N.W. "Disease brought about as the result of a wound, even though not the necessary or probable result, yet, if it is the natural result of the wound, and not of an independent cause, is properly attributed to the wound, and death resulting from the disease is a death resulting from the wound, even though the wound was not in its nature mortal, or even dangerous."

■ We must, therefore, conclude the death of plaintiff's heifers, if it was shown to be the result of an infection incurred by a bite or attack by a wild animal, was a loss contemplated by the defendant's insurance policy and the policy must be so construed under our previous pronouncements in like matters. Of course, even if there is some ambiguity in this provision, which we doubt, under the rule it must be construed most strongly against the company which drew the policy. See 43 Am. Jur.2d, Insurance § 271, p. 331.

■ II. Appellee attempts to sustain the court's decision on the ground that plaintiff failed to show by a preponderance of the evidence that plaintiff's heifers were attacked or bitten by a dog, hog or wild animal infected with the deadly virus pseudorabies, otherwise known as Aujesky's Disease or "Mad Itch."

It is true, the evidence of an attack is not strong. Largely due to the physical condition of the cattle, neither the plaintiff nor his attending veterinarian was able to locate a bite mark on the infected heifers, but Ray Drefke, a doctor of veterinarian medicine who viewed and treated these cattle, testified that this disease is generally transmitted through a bite from a wild animal or from a hog infected by a wild animal suffering from the disease. To the question, "Is this accepted in your profession as the only way that the cattle could contract this disease", the doctor answered "Yes." He stated further that hogs have been known to be carriers not susceptible to the disease but act as intermediate hosts and may convey such a disease to cattle by biting them.

On cross-examination the doctor's attention was called to a book on Veterinarian Medicine by Blood and Henderson which dealt with Pseudorabies or Aujeskey's Disease and to a passage which says, "The virus exist for four to seven weeks or more in infected premise. The disease is known to occur naturally only in pigs, cattle and sheep, although it has been suspected in horses." When asked if he agreed, the doctor's reply was that he did not quite understand what they meant by "naturally" but seemed to agree that the

disease generally occurs only in those animals and in wild animals.

In any event, it is clear that, although no bites or wounds were observed on the heifers, in the doctor's opinion this disease was contracted via a direct bite from a wild animal or from carrier hogs that had been infected by an attack of infected wild animals.

Although our review is de novo, we note the trial court that heard and saw the witnesses was convinced these cattle were infected directly or indirectly by an attack and bite of a diseased wild animal. We are inclined to agree, and find by a preponderance of the evidence plaintiff had established the source of the fatal disease was an attack by wild animals.

III. In its findings of fact the trial court stated, "Plaintiff's heifers averaged 296 pounds at date of purchase and, including freight thereon, they had an average cost on his farm of $226.69 per hundred weight." On the other hand, Exhibits 2 and 3 show they averaged 696 pounds each and the purchase price of the animals was $26.69 per hundred weight. The court found the fourteen animals gained an average of 120 pounds, and the market price from September 22nd to October 4th, 1968, was $26.65 per hundred weight. If our computations are correct, this would indicate a loss in excess of $3,042.20. However, plaintiff asked judgment for only $3,042.20 and can recover no more than that amount in this suit.

The judgment of dismissal is reversed and the matter is remanded for entry of a judgment in accordance with this opinion.

Reversed and remanded.

MOORE, C. J., and STUART, BECKER and LeGRAND, JJ., concur.

UHLENHOPP, MASON and REES, JJ., dissent.

RAWLINGS, J., takes no part.

UHLENHOPP, Justice (dissenting).

There is no direct evidence that the cattle were attacked by dogs or wild animals. The case hangs on this question and answer (by plaintiff to his expert, a veterinarian):

Q. Now, Doctor, do you have an opinion with reasonable medical probability, as to the cause of the contraction of this disease?

A. Yes, I feel certain that the disease is through a bite. We considered it from a wild animal to either the individual animal or also from a wild animal to hogs, or a carrier that therefore would go ahead and bite the cattle.

The trial court held that the cattle contracted the disease (a) from a bite by a wild animal or (b) from a bite from a hog which had been bitten by a wild animal.

Plaintiff did not prove which of these possibilities is the fact. Therefore for plaintiff to prevail, he must show that both possibilities are covered by the policy.

The policy covers "loss of livestock by * * * attack by dogs or wild animals."

A heifer bitten by a hog which has been bitten by a wild animal has not been attacked by a dog or wild animal, and the judgment dismissing the petition should be affirmed.

MASON and REES, JJ., join in this dissent.