WILLIAM LYDICK ET AL., APPELLANTS, v. INSURANCE COMPANY OF NORTH AMERICA, A CORPORATION, APPELLEE.

187 N. W. 2d 602

Filed June 4, 1971.   No. 37839.

J. William Gallup of Schrempp & Bruckner, for appellants.

C. L. Robinson of Fitzgerald, Brown, Leahy, McGill & Strom, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, SMITH, McCOWN, NEWTON, and CLINTON, JJ.

WHITE, C. J.

This is an action at law by the plaintiffs, William Lydick and James Lydick, upon a policy of insurance issued by the defendant, Insurance Company of North America, to recover the value of certain cattle alleged

to have been destroyed as the direct result of a windstorm. The district court sustained a motion for a summary judgment in favor of the defendant and dismissed the action. On appeal we affirm the judgment of the district court dismissing the action.

There is no genuine issue of fact in this case. The plaintiffs' case rests upon their undisputed testimony. The defendant introduced no evidence. The plaintiffs, William Lydick and James Lydick, are partners involved in farming and in cattle feeding. About 9 or 10 o'clock in the morning on January 2, 1969, James Lydick went to the feed lot to tend to the cattle and found 99 of them dead in a pond located on the feed lot. The wind, at the time the cattle were found in the water, was blowing at a rate of 30 miles per hour with gusts up to 40 to 50 miles per hour as it had been the day before. The plaintiffs testified that the cattle descended into the sheltered area around the ice-covered pond because of the cold and the wind. William Lydick also testified that they never would have gone onto the ice if it had not been covered with snow and if the wind had not been blowing. The cattle broke through the ice into the water before the plaintiff, James Lydick, arrived at the pond, and it was his opinion that this happened in the middle of the night of January 1-2, 1969. Snow had covered the pond all winter since the first snow, but the night of January 1-2, 1969, was the first time any cattle had gone onto the ice.

The weather was extremely cold. The plaintiff, William Lydick, stated that in his opinion it was quite a little below zero; that down the banks and around the pond it was probably 15 to 20 degrees warmer; that the cattle were seeking shelter from the wind and the cold; and that there were 3 or 4 inches of snow on the pond.

As to the immediate cause of the cattle breaking through the ice, the plaintiff, William Lydick, testified as follows: "Q. These cattle, are they willing to go out onto the ice? A. No, these cattle would never have

gone out if it wasn't snow out there. They won't hardly go on ice. The pond at this particular time was covered with about three or four inches of snow, I don't know exactly."

The pertinent provisions of the policy provide: "* * * this Policy is Extended to Insure against *Direct* loss by Windstorm, Hail, Explosion, * * *.

"Provisions Applicable Only to Windstorm and Hail: This Company shall not be liable for loss caused directly or indirectly by *frost* or *cold weather* or *ice* (other than hail), snow or sleet, *whether* driven by *wind* or not. * * *

"This Company shall not be liable for any loss to livestock or poultry caused in whole or in part by *running into streams or ditches* or against fences or other objects, or from smothering; nor for loss as the direct or indirect result of fright, howsoever caused. * * *

"Unless liability therefor is assumed in the form attached to this policy, or by endorsement hereon, this Company shall not be liable for damage to the following property: * * * (e) poultry, horses, mules, cattle, swine and sheep *caused by freezing or smothering in blizzards or snowstorms.*" (Emphasis supplied.)

The undisputed facts in this case automatically place themselves apposite the insuring and exclusionary clauses. At the risk of analyzing the obvious, we observe that the loss of the cattle was not caused *directly* by the wind in the sense that the wind itself damaged the cattle by throwing them to the ground, over a cliff, or causing another object to strike them. The evidence demonstrates that the loss of these cattle was due to a combination of different factors and that the wind was merely one of the prior conditions contributing to the loss.

The policy insures against *direct* loss only. As the trial court cogently observed there were many other antecedent and contributing factors that produced this loss. The important one, of course, was the extreme cold to which the plaintiffs themselves testified, but

for its existence, the loss would not have occurred. It would not have occurred but for the fact that the most convenient and available shelter was in a depression where there was an ice-covered pond; it would not have occurred but for the frozen ice covering the pond; and even more important, it would not have occurred but for the fact that there were 3 or 4 inches of snow which covered the ice so the cattle would be willing to venture on it; nor would it have occurred but for the fact that the ice was too thin to support the weight of the cattle; and the evidence shows that more than 100 head of these cattle gathered at the same time on the thin ice and collectively produced the fall-through into the water that caused their death. Under these circumstances we agree with the district court in holding that the loss, at most, was not directly caused by the wind.

The immediate and direct cause of the loss in this case was the collapse of the ice on which the cattle stood. The cold wind, by maximum inference, merely created an antecedent and preliminary condition which contributed to their wandering upon the snow-covered ice, and thus can only be considered as an indirect cause. In the context of this case the meaning of "direct causation" is defined aptly in Lorio v. Aetna Insurance Co. (La. App.), 220 So. 2d 781, a quite similar case involving an interpretation of a windstorm exclusionary clause. There the court said as follows: "The term 'directly resulting from' has not been heretofore construed by the courts of this state. In so doing, we must give to those words their ordinary significance. 'Directly', as defined in Webster's New Collegiate Dictionary, 1961 edition, means 'In a direct manner, without anything intervening.' 'Intervene' means '1. To enter or appear as an irrelevant or extraneous feature or circumstance; to come (in between). 2. To occur, fall or come between points of time or events.' 'Result' means 'To proceed, spring or arise, as a consequence, effect or conclusion.'

"From the above, we conclude that death 'directly resulting from' some event would mean a death which is caused by or is a consequence of an event and which would have occurred without the existence or intrusion of other causes or conditions unrelated to the original event."

The same conclusion follows from the policy provision which specifically excluded damages caused by cold weather, ice, or snow, whether driven by wind or not. As we analyze the plaintiff's evidence, their entire theory is that the temperature was warmer in the depressed area of the pond since it was sheltered from the cold wind. They testified positively that the cattle would not have sought shelter if the wind had not been cold. They also testified that the cattle would not have ventured onto the ice had it not been covered with snow. It would appear, therefore, from the testimony of the plaintiffs themselves that the cold and the snow were the important, and probably the dominant factors in causing the cattle to wander onto the ice with the resultant collapse of the ice and the drowning in the pond. The general rule is that if a windstorm combines with a hazard expressly excluded from the policy coverage to produce the loss, the insured may not recover. 44 Am. Jur. 2d, Insurance, § 1393, p. 236; Holmes v. Phenix Ins. Co., 98 F. 240; Hartford Fire Ins. Co. v. Nelson, 64 Kan. 115, 67 P. 440; Abady v. Hanover Fire Ins. Co., 266 F. 2d 362.

Summarizing this case, it is clear that the wind itself did not directly harm the cattle; the most that can be said is that the wind and the cold combined as prior conditions to cause the cattle to seek shelter. This was not in itself dangerous except for the pond in the depression. Even then no injury would have resulted had not the pond been frozen and covered with a large accumulation of snow tempting the cattle to venture onto the ice.

It is clear that the loss suffered by the plaintiffs was

not directly caused by the wind and the holding comes within the exclusionary provisions of the policy. The judgment of the district court is correct and is affirmed.

AFFIRMED.