**SHINRONE, INC. and Frances G. Bridge, Appellees, Cross-Appellants,**

v.

**INSURANCE COMPANY OF NORTH AMERICA, Appellant, Cross-Appellee.**

**Nos. 77–1015, 77–1044.**

United States Court of Appeals,
Eighth Circuit.

Submitted Oct. 11, 1977.

Decided Feb. 7, 1978.

James L. Kramer, Fort Dodge, Iowa, for appellant, Arthur H. Johnson, Fort Dodge, Iowa, on brief.

Thomas L. McCullough, Sac City, Iowa, for appellee, Colin J. McCullough, Sac City, Iowa, on brief.

Before GIBSON, Chief Judge, BRIGHT, Circuit Judge, and TALBOT SMITH, Senior District Judge.*

* The Honorable Talbot Smith, Senior United States District Judge, Eastern District of Michigan, sitting by designation.

GIBSON, Chief Judge.

In this diversity case, removed from the state court, a jury verdict resulted in a judgment of $82,240 for plaintiffs Shinrone, Inc. and Frances G. Bridge (hereinafter referred to as Shinrone or plaintiffs) on an insurance policy covering livestock. Defendant, Insurance Company of North America (INA), appeals, contending that the court's instructions were prejudicially erroneous and the plaintiffs failed to make a submissible case. Shinrone cross-appeals on the trial court's ruling that a dismissal of a part of plaintiffs' claim was with prejudice.[1]

The policy issued to Shinrone provided in pertinent part:

3.b. This policy insures livestock against:

(1) Death or destruction, directly resulting from or made necessary by:

(b) Windstorm * * *.

4. This policy does not insure:

(b) Against loss or damage caused by * * * dampness of atmosphere or extremes of temperature.

On April 8, 1973, a severe wind and snow storm struck Iowa, during which 166 calves died on the Shinrone ranch. Previous to the storm, the weather was unseasonably warm and wet, causing extremely muddy conditions. The mud was two feet deep in the Shinrone feedlots when the windstorm commenced. The wind was accompanied with considerable snow, but most of the snow fell on the second and third days of the storm. At the time of the storm, there were 15,000 cattle on the ranch, and of these, 166 calves, approximately six months old and averaging 300 to 400 pounds in weight, died.[2]

Plaintiffs' expert, a veterinarian, testified that six factors combined to cause the

calves' death: (1) wind; (2) drop in temperature; (3) snow; (4) the size and age of the cattle; (5) the extremely muddy conditions; and (6) the lack of adequate wind protection. The veterinarian also gave as his opinion that the calves died because of the storm, pointing out that calves do not handle stress as well as older animals, and that the calves died from exposure, exhaustion and shock in trying to cope with the storm. He also testified the wind was the most significant factor but that the wind alone would not have killed the animals.

Plaintiffs' complaint sought to recover the value of 390 head of cattle, 166 of which were the property of Frances Bridge, allegedly lost on April 9, 1973, in Iowa (Division I), and of 101 head of cattle allegedly lost in Colorado between October 31 and November 7, 1972 (Division II). No testimony was offered in support of the Division II claim for the cattle lost in Colorado, and the district judge subsequently dismissed that part of the claim with prejudice.

In connection with the Iowa cattle loss, INA contends that for plaintiffs to recover it would be necessary to establish (1) that there was a windstorm; (2) that the death of the cattle resulted directly from the windstorm; and (3) that the policy exclusions against dampness of atmosphere or extremes of temperature do not prevent recovery. Based on the above requirements, INA requested the following instruction:

You are instructed that a windstorm, in contemplation of law, is a storm characterized by high winds, with little or no precipitation, and an ordinary gust of wind, no matter how prolonged, is not a windstorm. In order to constitute a windstorm, the wind must be of such violence and velocity as to assume the aspect of a storm, that is, an outburst of tumultuous force. A windstorm means a

---

1. Shinrone's complaint consisted of two separate claims: Division I, for loss of cattle in Iowa; and Division II, for loss of cattle in Colorado. At the close of all the evidence, INA moved for a directed verdict on both claims. Shinrone then withdrew the Division II claim

and the motion on the Division I claim was overruled.

2. Cattle losses were general throughout Iowa. Over 100,000 head of Iowa cows, calves and feeder cattle died in the storm, according to one exhibit received in the case.

storm of wind of unusual force and violence. A windstorm must be taken to be a wind of sufficient violence to be capable of damaging the insured property by its own unaided action.

The trial court deleted the reference to "little or no precipitation" and otherwise tailored INA's request to instruct as follows:

> You are instructed that a windstorm, in contemplation of law, is a storm characterized by high winds, and an ordinary gust of wind, no matter how prolonged, is not a windstorm. In order to constitute a windstorm, the wind must be of such violence and velocity as to assume the aspect of a storm, that is, an outburst of tumultuous force.

■ INA's principal attack on this instruction is the court's deletion of the requirements that the storm be accompanied with little or no precipitation and that the windstorm must be of sufficient violence to be capable of damaging the insured property by its own unaided action. INA cites *Jordan v. Iowa Mutual Tornado Insurance Co.*, 151 Iowa 73, 130 N.W. 177, 178 (1911), where the court, augmenting a definition from Webster, defined windstorm as:

> A storm characterized by high wind with little or no precipitation. * * * more than an ordinary current of air, no matter how long continued. * * * In other words it must assume the aspect of a storm, i. e., an outburst of tumultuous force.

This definition of windstorm, was, many years later, in *Crozier v. Lenox Mutual Insurance Association*, 252 Iowa 1176, 110 N.W.2d 403, 408 (1961), used and amplified as an Iowa definition of windstorm. The court there commented that the additional criterion, that "a windstorm must be taken to be a wind of sufficient violence to be capable of damaging the insured property by its own unaided action", was supported by authority, but recognized that "[t]he added sentence might not be appropriate in all cases", although in the case then on trial this language was a proper adaptation to the issues in evidence. *Crozier v. Lenox*

*Mutual Insurance Association, supra* at 409. From these decisions, INA deduces that the Iowa definition of windstorm has always meant a storm with little or no precipitation.

INA's other requested instruction sought to incorporate the concept that even if there was a windstorm which combined with the dampness of atmosphere or the extremes of temperature and either directly or indirectly caused the death of the livestock, the verdict must be for the defendant, since an included condition had combined with an excluded condition to bring about the death of the livestock. INA argues that, in that situation, death of the livestock could not be viewed as occurring as a direct result of the wind. INA's requested instruction read:

> You are instructed that if the windstorm combined with a hazard expressly excluded from the policy coverage, that is, extremes of temperature or dampness of atmosphere, or both, to produce the death of plaintiffs' livestock, the death of the livestock is not a direct result of windstorm and the plaintiffs may not recover.

The trial court's instruction read:

> You are instructed that the burden of proof is on the plaintiffs to prove by a preponderance of the evidence in this case that the death of their livestock, for which they seek to recover in this case, was caused directly by windstorm and not the result of some other cause. If you find, from a preponderance of the evidence, that the death of plaintiffs' livestock was not directly caused by the windstorm, or if you find, from a preponderance of the evidence, that the extremes of temperature and the dampness of the atmosphere were the dominant and proximate cause of the death of the plaintiffs' livestock, you should return a verdict for the defendant.

The court also stated that policy exclusions were affirmative defenses which must be established by the insuror.

INA contends that exclusions contained in the policy bar recovery if the excluded

risks contributed to the death of the livestock. INA concedes that the Iowa Supreme Court has not directly passed upon this issue, but contends that from the Iowa decisions it could be inferred that the Supreme Court of Iowa [3] appears to favor the rule that the coverage does not exist where an excluded risk combines with an included risk to bring about the loss. With no authoritative Iowa cases to settle this issue, INA cites *Lydick v. Insurance Co. of North America*, 187 Neb. 97, 187 N.W.2d 602 (1971), as the case closest on point to the case at bar. In that case the cattle had died during a storm. They had descended to a sheltered area around a snow- and ice-covered pond in order to escape the cold and the wind and had ventured onto the ice. The combined weight of the cattle broke the ice and the cattle drowned. The insurance policy provided for direct loss by windstorm but excluded loss caused directly or indirectly by frost or cold weather or ice and had an additional provision excluding liability for animals running into streams or ditches or for losses resulting from their fright. The court there held that the loss of the cattle was not caused directly by the wind but was due to a combination of different factors with the wind merely being one of the prior conditions contributing to the loss. Since the policy insured against direct loss only and there were contributing factors which produced this loss, the court held for the defendant, stating: "The general rule is that if a windstorm combines with a hazard expressly excluded from the policy coverage to produce the loss, the insured may not recover." (Citations omitted.) *Lydick v. Insurance Co. of North America, supra* at 605.

*Lydick* is supportive of INA's position, but the policy terms there differed from and were more restrictive than those in INA's policy. As is not unusual, the courts have differed on the approach taken in cases involving insurance losses due to multi-factored causes, some of which are covered and others of which either are not covered or are expressly excluded.

Where the wind and an excluded risk concur in causing loss, some courts deny recovery. *National Fire Insurance Co. v. Crutchfield*, 160 Ky. 802, 170 S.W. 187 (1914); *Lydick v. Insurance Co. of North America, supra; Coyle v. Palatine Insurance Co.*, 222 S.W. 973 (Tex.Com.App.1920). Other courts have held that the insured may recover even though the excluded risks contributed to the loss, so long as their contribution was indirect and incidental. *Anderson v. Connecticut Fire Insurance Co.*, 231 Minn. 469, 43 N.W.2d 807 (1950); *Trexler Lumber Co. v. Allemannia Fire Insurance Co. of Pittsburgh*, 289 Pa. 13, 136 A. 856 (1927). Yet a third analytic approach, adopted by a number of the courts that have addressed the question of recovery under insurance policies covering "direct loss" by windstorms, is keyed to the issue of whether the windstorm was the efficient or proximate cause of loss, notwithstanding the contribution of other factors to the loss.[4] *Kemp v. American Universal Insurance Co.*, 391 F.2d 533 (5th Cir. 1968); *Travelers Indemnity Co. v. Wilkes County*, 102 Ga.App. 362, 116 S.E.2d 314 (1960); *Lumbermens Mutual Casualty Co. v. Ely*, 253 Md. 254, 252 A.2d 786 (1969).

The trial court's instruction defining windstorm and direct loss policy provisions permitted recovery where the windstorm was "the dominant or proximate cause" of

---

**3.** This case again focuses on the anomaly of having a federal court declare unsettled principles of state law where the parties could have an authoritative decision in this matter from the Iowa courts. The plaintiffs filed the case in Iowa state courts, and INA had the option of continuing in Iowa courts or removing to the federal court. INA thus forsook the opportunity of obtaining an authoritative decision from the state court for a federal court's opinion of what the Iowa law ought to be. And, of course, the federal court's holding in this diversity case has no binding effect on state law. In cases of this type it would always appear preferable to have the matter decided authoritatively by the state court.

**4.** For an instructive analysis of cases dealing with the question of direct loss under windstorm policies, see Annot., 65 A.L.R.3d 1128 (1975).

the loss. This definition of the direct loss policy provision certainly was a permissible approach that falls within the parameters of the decisional law discussed above and appears to be an appropriate and reasonable view on the issue here presented. The trial court's position does not appear to be contrary to the Iowa law, since there are no Iowa cases directly on point. However, the Iowa case of *Jordan v. Iowa Mutual Tornado Insurance Co., supra*, did hold that the issue of proximate cause was a fact question and that:

> [T]he trial court was justified in finding loss would not have happened but for the windstorm, and that this windstorm was the efficient cause of the damage. That other irresponsible causes may also have contributed to the loss does not, of itself, relieve the defendant from responsibility. [Citations omitted.]

*Jordan v. Mutual Tornado Insurance Co., supra* 130 N.W. at 181.

As noted heretofore, INA had the option in this case to secure an authoritative decision from the Iowa courts. We feel that INA's restrictive view of its coverage, requiring a windstorm "with little or no precipitation" and of "sufficient violence to be capable of damage to the insured property by its own unaided action", renders the policy virtually inoperative and practically meaningless. No coverage would exist during the winter months and the highly restrictive coverage during the other months would be of such limited value as to be an imposition on the public seeking insurance covering losses occasioned by the vagaries of the elements.

Here the questions of "direct loss" and "proximate cause" were properly submitted to the jury for the determination of whether the windstorm was the dominant or efficient cause of the loss, even though there may have been other contributing causes. We find no error in the court's instructions in this case and affirm on that issue.

■ The plaintiffs' cross-appeal lacks merit. Plaintiffs, having filed their cause of action and proceeded to a trial thereon, should have, absent unusual circumstances, proceeded to a resolution of the issues therein raised. Under Rule 41(a)(2) of the Federal Rules of Civil Procedure, "an action shall not be dismissed at the plaintiff's instance save upon order of the court and upon such terms and conditions as the court deems proper. * * * Unless otherwise specified in the order, a dismissal under this paragraph is without prejudice."

Here the plaintiffs, at the close of all the evidence and after defendant had moved for a directed verdict, dismissed Division II of their complaint. No evidence had been offered on Division II for the stated reason that the witness to that claim would not be in court until the following day. The court informed the jury that the Division II claim had been withdrawn and submitted the other claim for the jury's determination. The court later ruled that the dismissal of the Division II claim was with prejudice.

Whether the dismissal of the Division II claim was with or without prejudice was at the discretion of the court. The court exercised its discretion in holding that the dismissal was with prejudice. The plaintiffs here did not ask for a continuance or advance any substantial reason why they were not prepared to proceed with their Division II claim. It would be palpably unfair to subject the defendant to the additional expense and inconvenience of a second trial on this claim under these circumstances. Rule 41, as now written, gives broad discretion to trial courts to consider the factors and the equities involved in dismissals, and either to deny them or allow them with or without prejudice. There was no abuse of discretion in this case. The judgment of dismissal with prejudice of Division II of the plaintiff's claim is affirmed.

Judgment affirmed.