317 N.W.2d 741 (1982)
211 Neb. 13
Curtis GRAFF, Appellee,
v.
FARMERS MUTUAL HOME INSURANCE COMPANY OF HOOPER, DODGE COUNTY, Nebraska, Appellant.
No. 43920.
Supreme Court of Nebraska.
March 26, 1982.
*742 George E. Svoboda, P.C., of Sidner, Svoboda, Schilke, Wiseman & Thomsen, Fremont, for appellant.
Moodie & Moodie, West Point, for appellee.
Heard before KRIVOSHA, C. J., and BOSLAUGH, McCOWN, CLINTON, WHITE, HASTINGS, and CAPORALE, JJ.
KRIVOSHA, Chief Justice.
The appellant, Farmers Mutual Home Insurance Company of Hooper, Dodge County, Nebraska (Farmers Mutual), appeals from a judgment in the amount of $6,390.79, together with interest and costs, entered by the District Court for Cuming County, Nebraska, in favor of the insured, Curtis Graff (Graff), and against Farmers Mutual. We affirm.
Farmers Mutual issued its policy No. 36263 to Graff for a term of 3 years from the 15th day of December 1978 to the 15th day of December 1981. This policy was apparently a replacement policy for an earlier identical policy issued by Farmers Mutual to Graff. The policy specifically provided that Farmers Mutual insured Graff "against loss or damage by fire, lightning, wind, tornado, supplemental ...." (Emphasis supplied.) There are no exceptions in the policy which are relevant to this case.
During the fall of 1974 Graff constructed a new hog house on his farm near Bancroft, Nebraska. Before construction was completed, an agent for Farmers Mutual personally inspected the building, observing the structural design as well as its size and location. Following the inspection, the hog house was added to the policy of insurance which was then in existence and which preceded policy No. 36263.
The record further discloses that early in March 1979 a blizzard occurred in the area of the Graff farm. Rain started falling on March 2, 1979. The rain turned into snow accompanied by high winds and extended through March 3 and Sunday, March 4. On Sunday morning, March 4, Graff worked until 1 p. m. taking care of the chores. About 3 o'clock on Sunday afternoon, March 4, Graff left his house to check on the livestock. He testified that he had great difficulty walking north into the wind toward the hog house which was only 100 feet away but which was not visible because of blowing snow. As he approached the hog house, he could see a huge drift of snow on top of the hog house. The drift appeared to be some 12 or 14 feet high. He entered the hog house through its walk-in door and heard creaking and could see the building curve off to the south. He went to another building to get 6- × 8-inch timbers to prop against the south side of the hog house.
However, before he could return with the supports, the hog house failed, falling to the *743 south. Graff testified that in his opinion the wind velocity during the storm was up to 80 miles per hour. Graff's wife further testified that in her opinion the wind velocities were between 70 and 80 miles per hour. Graff made claim for the damages under his policy with Farmers Mutual. Farmers Mutual denied coverage, maintaining that the evidence was insufficient to establish that the damages to the hog house were caused by a windstorm within the meaning of the policy.
The parties waived a trial to a jury and the case was tried to the court. Following conclusion of all the evidence, the trial court entered judgment in favor of Graff and against Farmers Mutual. In a letter to the attorneys for the parties, the trial court advised them: "In my opinion, the insurance company accepted the risk of the structure when the policy was issued, in that the uncontradicted evidence is that an agent for the company came to the farmsted [sic], looked the structure over and after so doing, issued the policy of insurance....
"The more difficult issue is whether or not the loss was one occasioned by wind storm or from some other cause. Again, the uncontraverted [sic] evidence is that a violent storm took place on the day of the loss and that as a result of that storm, this loss occurred. I am not unmindful of the weather reports from Sioux City and Norfolk that were offered and received into evidence, but I do feel that the more probative evidence came from the mouths of the witnesses who were on the spot at the time the storm hit."
Farmers Mutual's principal contention seems to be that absent evidence of a wind of "unusual violence or tumultuous force," there is no coverage under the policy. Sherman v. Travelers Ind. Co., 193 Neb. 104, 225 N.W.2d 547 (1975). Apparently, Farmers Mutual's position is to the effect that nothing less than a tornado-like wind may be sufficient to constitute a wind of "unusual violence or tumultuous force."
Our decision in Hoagland & Co. v. Insurance Co., 131 Neb. 105, 267 N.W. 239 (1936), is most helpful in addressing the question of what is a windstorm within the meaning of an insurance policy of this type. In Hoagland we held that a wind blowing at 30 miles per hour was sufficient to constitute a windstorm as the term is used in a policy of insurance. In particular, we said at 110, 267 N.W. at 241-42: "In some of the cases it has been said that to constitute a windstorm the wind must assume the aspects of a storm; that is, an outburst of tumultuous force. Webster defines a windstorm as a storm characterized by high wind, with little or no precipitation.
"It must be conceded that none of these definitions affords an exact yardstick by which to determine when a wind becomes a windstorm. It is apparent that only a very general definition of the term can be given. It must be a wind of unusual violence or tumultuous force, and whether it attains that proportion is a question of fact.
"Defendant contends that, since it is not shown that any other buildings in the vicinity were blown down or damaged by the wind, it tends to negative the thought that it was a windstorm and that plaintiff's building was demolished thereby. We think it is a matter of common knowledge that in this part of the country a wind may attain the proportions of a windstorm and blow with great violence for a few seconds; may lift and only cover a small space. It is a matter of common knowledge that one of a group of farm buildings may be destroyed by a windstorm, while other buildings, in close proximity, are uninjured. Likewise, in orchards and groups of shade trees, one or more trees may be broken and damaged by the wind, showing great violence, while trees in close proximity thereto may be uninjured. The freakish character of the wind and the way it shifts and rises in this particular part of the country are matters of common knowledge. Where the evidence as to whether a windstorm is of sufficient violence or so tumultuous as to constitute a windstorm is in conflict, the question is one for the determination of the jury."
Even in the Sherman case, relied upon by Farmers Mutual, we said at 105, 225 N.W.2d at 548: "We do not pass upon the *744 question of whether a 22 mile per hour wind is evidence of an unusually violent or tumultuous character ...."
Cases may be found in other jurisdictions where winds as low as 15 to 28 miles per hour have been held to be "windstorms" under a property damage policy, as well as a windstorm of 62 miles per hour. See, Gerhard v. Travelers Fire Ins. Co., 246 Wis. 625, 18 N.W.2d 336 (1945); Higginson v. Fireman's Fund Ins. Co., 186 Pa.Super. 650, 142 A.2d 737 (1958); Humphrey v. Fidelity-Phenix Fire Insurance Company, 135 So.2d 81 (La.App.1961).
We believe what was said in Hoagland, supra, to be the better approach to this problem. Whether a wind is of sufficient force to be within the meaning of a policy insuring against damage caused by wind must in each instance be a question of fact.
In the instant policy the language selected by Farmers Mutual was not "windstorm," as in Hoagland or even Sherman, but only "wind." Whether the evidence was sufficient to establish that the damages were within the coverage of the policy was for the trier of facts. The trial court found in favor of Graff, and we may not ignore that finding absent clear error. We have frequently held that in determining whether the findings of the District Court are supported by the evidence, we must consider the evidence and all permissible inferences therefrom in a light most favorable to the successful party. See Gehrke v. General Theatre Corp., 207 Neb. 301, 298 N.W.2d 773 (1980). We have further held that where a jury has been waived and the case tried to the court, the judgment of the trial court has the effect of a verdict of a jury and will not be disturbed unless clearly wrong. Tibbs v. Fisher, 208 Neb. 306, 303 N.W.2d 293 (1981); Koperski v. Husker Dodge, Inc., 208 Neb. 29, 302 N.W.2d 655 (1981).
Farmer's Mutual urges us to ignore the evidence offered by Graff and apparently relied upon by the trial court. For reasons already noted, we know of no principle of law which would permit us to do so. We therefore find that the trial court's conclusion that the wind in the instant case was of sufficient force to bring it within the terms of the policy is supported by the evidence and should not be disturbed.
Farmers Mutual further argues that even if the court should find that the particular wind was of unusual violence or tumultuous force, the evidence does not clearly establish that the building was blown down by the wind or that the damage to the building was caused by the wind. Farmers Mutual argues that the building more likely collapsed from the weight of the snow on a portion of the building's roof and not from the action of the wind. Even if that were the case, under the evidence herein and the policy involved, judgment would still be for the plaintiff. Unlike policies which require loss or damage resulting from "direct loss by windstorm," the instant policy merely insured against loss or damage "by wind." The case of Lydick v. Insurance Co. of North America, 187 Neb. 97, 187 N.W.2d 602, 605 (1971), is an example of a case where the policy required "direct" loss rather than merely loss. The policy in Lydick specifically provided: "`[T]his Policy is Extended to Insure against Direct loss by Windstorm, Hail, Explosion, * * *.'" Id. at 99, 187 N.W.2d at 604.
In denying recovery for the insured in Lydick, this court specifically found that the loss was not the direct result of windstorm. We said at 99, 187 N.W.2d at 604: "The evidence demonstrates that the loss of these cattle was due to a combination of different factors and that the wind was merely one of the prior conditions contributing to the loss.
"The policy insures against direct loss only." (Emphasis in original.)
We believe that the distinction is significant and controlling in this case. The uncontradicted evidence in the instant case was that the building collapsed either as a direct result of the wind blowing against the building or by reason of the wind blowing the snow upon the building, causing its collapse, or a combination of the two. In *745 any event, however, it is clear from the evidence that the loss was occasioned by the wind. The policy in question was prepared by Farmers Mutual and did not require that the loss be directly caused by a windstorm, but only caused by a wind. There appears to be no serious question but that the huge mound of snow located on the hog building was blown there by the wind and did not just fall from the sky upon the roof.
While deciding the case on other grounds, we acknowledged in Parish v. County Fire Ins. Co., 134 Neb. 563, 279 N.W. 170 (1938), that if a windstorm was the efficient cause of the loss covered by a policy insuring against "loss by windstorm," the fact that other causes may have contributed to that loss does not relieve the insurer from liability.
In 44 Am.Jur.2d Insurance § 1392 at 235 (1969), the author notes: "The loss for which recovery is sought under a tornado, cyclone, or windstorm policy seldom results from a single isolated cause, but rather from a combination of causes, such as wind and water, or wind and snow, and the like. In the absence of a specific provision in the policy to the contrary, it is generally sufficient, in order to recover upon a cyclone, tornado, or windstorm policy, to show that the cause designated therein was the efficient cause of the loss, although other causes contributed thereto. Where an object, damage from which is not expressly excluded from coverage of the policy, is blown by the force of a windstorm against the insured property, causing damage thereto, the loss is within the policy coverage, since the wind-driven object is merely the passive agent of the damage, and the windstorm by its propulsive force is the controlling causal agent directly responsible for the loss." See, also, Annot., 93 A.L.R.2d 145 at 156 (1964).
We are unable to say that the trial court's findings in this case were clearly wrong. That being the situation, it cannot be disturbed.
Farmers Mutual further objects to the amount of the attorney fee ordered by the trial court to be paid Graff by Farmers Mutual. Counsel for Graff submitted an affidavit in support of his claim for fees which establishes that counsel devoted 81 hours in the preparation and trial of the case. The trial court allowed a fee based upon the 81 hours multiplied by a reasonable per hour rate. In Stephens v. Allied Mut. Ins. Co., 182 Neb. 562, 156 N.W.2d 133 (1968), we held that, where allowed, the amount of an allowance for attorney fees generally rests in the sound discretion of the court. We cannot say that under the circumstances the trial court abused its discretion.
The amount of the fee appears large as compared to the amount of the claim involved. That is not, however, Graff's fault. The affidavit does not indicate the performance of any unnecessary work for which Graff's counsel should not be paid. That a relatively minor claim may produce a large fee is simply one of the factors the parties have to consider in determining whether to litigate a claim or attempt to settle it.
The judgment of the trial court is in all respects affirmed. An additional fee of $1,000 is awarded Graff as part of the costs in this court.
AFFIRMED.