CURTIS O. GRIESS & SONS, INC., A NEBRASKA CORPORATION, APPELLEE, V. FARM BUREAU INSURANCE COMPANY OF NEBRASKA, A NEBRASKA INSURANCE CORPORATION, APPELLANT.

528 N.W.2d 329

Filed March 10, 1995.   No. S-93-342.

Gary J. Nedved, of Bruckner, O'Gara, Keating, Hendry, Davis & Nedved, P.C., for appellant.

Donald L. Dunn and Carl J. Sjulin, of Rembolt Ludtke Parker & Berger, for appellee.

HASTINGS, C.J., WHITE, CAPORALE, FAHRNBRUCH, LANPHIER, WRIGHT, and CONNOLLY, JJ.

LANPHIER, J.

Appellee plaintiff's swine were infected with pseudorabies after a tornado carried the virus to its swine–raising operation on March 13, 1990. Plaintiff's swine were insured by defendant insurance company for physical loss caused directly by an applicable peril. Windstorm is a covered peril under the policy. After defendant denied coverage for the loss, plaintiff brought a

declaratory judgment action to declare the rights, status, and legal relations of the parties under their contract of insurance. The district court for Lancaster County granted partial summary judgment for plaintiff on the issue of liability, finding that the windstorm was the direct, proximate, and efficient cause of plaintiff's losses. The issue of damages was submitted to the trial court. After judgment was entered for plaintiff, defendant appealed. Defendant argues that an insurance policy providing coverage for physical loss caused directly by windstorm does not include coverage for the airborne transmission of an infectious disease. We affirm the judgment of the district court.

## BACKGROUND

On January 18, 1990, plaintiff, Curtis O. Griess & Sons, Inc., purchased from defendant, Farm Bureau Insurance Company of Nebraska, for $6,364.40, an insurance policy to cover its livestock from harm caused by certain defined perils, including windstorm. The policy covered "physical loss to the property described in the coverage caused directly by an applicable peril . . . unless the loss is excluded . . . ." Windstorm was a peril insured against. Infectious diseases were not excluded.

On March 13, 1990, a windstorm occurred in Clay County, Nebraska. This tornado traveled from the southwest to the northeast. Southwest of plaintiff's farm, in the path of the tornado, were several herds of pseudorabies–infected swine which had been quarantined by the state Department of Agriculture. Defendant does not dispute that the pseudorabies virus was transmitted to plaintiff's farm by the windstorm. Defendant also does not dispute that plaintiff's swine herd became infected with pseudorabies and that the pseudorabies resulted in either death or damage to plaintiff's swine.

The parties agree that plaintiff incurred $128,732.38 in veterinarian expenses to prevent further damage to the herd related to the testing, treating, and management of the pseudorabies. The parties also stipulated that plaintiff refunded $19,900 to purchasers of breeding gilts sold shortly after the herd became infected, but before the symptoms could be detected.

The affected swine were "Lieske Genetics" maintained for breeding. They therefore command a premium in the breeding stock market. Many pigs died of the infection. Those which did not die could not be used for breeding, but only for slaughter. Because the swine could not be used for breeding, a portion of their value was lost.

## ASSIGNMENTS OF ERROR

Defendant claims the district court erred in the following respects: (1) in granting plaintiff's motion for summary judgment on the issue of liability and overruling defendant's motion for summary judgment, (2) in finding that plaintiff was entitled to recover the sum of $19,990 for refunds made by plaintiff to a third–party purchaser of its hogs, and (3) in awarding plaintiff the sum of $128,732.38 for veterinarian fees incurred by plaintiff in treating the pseudorabies.

## STANDARD OF REVIEW

In reviewing a summary judgment, an appellate court views the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *Huntwork v. Voss, ante* p. 184, 525 N.W.2d 632 (1995). Summary judgment is to be granted only when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Id.* Regarding questions of law, an appellate court has an obligation to reach a conclusion independent of that of the trial court. *Fiese v. Sitorius, ante* p. 227, 526 N.W.2d 86 (1995).

## ANALYSIS

### POLICY COVERAGE

Defendant first assigns as error the district court's granting of plaintiff's motion for summary judgment on the issue of liability and the overruling of defendant's motion for summary judgment. Defendant does not argue that there is a genuine issue of material fact; rather, defendant submits that under the undisputed facts of the case, plaintiff is not entitled to judgment

as a matter of law. Defendant contends that the immediate, dominant, and proximate cause of plaintiff's loss was pseudorabies and not windstorm. Defendant ends its argument by submitting that since the airborne transmission of an infectious disease is not a covered peril, there is no liability under the policy. Thus, causation is the crux of the parties' dispute. With respect to causation, the parties agree that the pertinent policy language is the phrase "caused directly."

In order to recover under an insurance policy of limited liability, the insured must bring himself or herself within its express provisions. *Brown v. Farmers Mut. Ins. Co.*, 237 Neb. 855, 468 N.W.2d 105 (1991). When the terms of an insurance policy are clear, they are to be accorded their plain and ordinary meaning. *Id.* Since the phrase "caused directly" is clear, it will be accorded its plain and ordinary meaning. "Direct" means immediate or proximate as opposed to remote or incidental. *Id.*; *Clouse v. St. Paul Fire and Marine Ins. Co.*, 152 Neb. 230, 40 N.W.2d 820 (1950). Thus, under the terms of the policy, plaintiff may recover only for loss which has been proximately caused by a specified peril.

> "In determining the cause of a loss for the purpose of fixing insurance liability, when evidence of concurring causes of the damage appears, the proximate cause to which the loss is to be attributed is the dominant, the efficient one that sets the other causes in operation; and causes which are incidental are not proximate, though they may be nearer in time and place to the loss. [Citations omitted.]"

*Brown*, 237 Neb. at 870, 468 N.W.2d at 116.

In support of its argument that the windstorm was not the proximate cause of plaintiff's loss, defendant relies upon *Lydick v. Insurance Co. of North America*, 187 Neb. 97, 187 N.W.2d 602 (1971). The plaintiffs in *Lydick* sued their insurance company to recover the value of cattle allegedly destroyed as a result of a windstorm. The evidence adduced suggested that the plaintiffs' cattle had descended into a sheltered area around an ice-covered pond to escape the cold temperatures and wind. The ice on the pond broke and the cattle . drowned. We determined that the insurer was not liable for the loss for two

reasons. First, we determined that the loss was not directly caused by the windstorm. We stated: "The evidence demonstrates that the loss of these cattle was due to a combination of different factors and that the wind was merely one of the prior conditions contributing to the loss." 187 Neb. at 99, 187 N.W.2d at 604. Further, we stated: "The cold wind, by maximum inference, merely created an antecedent and preliminary condition which contributed to their wandering upon the snow-covered ice, and thus can only be considered as an indirect cause." 187 Neb. at 100, 187 N.W.2d at 604. Additionally, we held that the loss was caused by a hazard expressly excluded by the policy.

Defendant submits that, as in *Lydick*, the windstorm in the instant case was merely a prior condition contributing to the loss. However, we disagree.

Physical loss by windstorm is a covered peril. The wind need not pick up and throw the swine to the earth to constitute a direct cause of the loss. We have never defined windstorm so narrowly. When windborne materials occasion a loss, the loss is considered the direct result of a windstorm, because the windstorm is considered the dominant, efficient cause which set the concurring cause in motion. See, *Sun Ins. Office v. Guest Camera Store*, 108 Ga. App. 339, 132 S.E.2d 851 (1963); *Firemen's Insurance Co. of Newark v. Senseney*, 250 F.2d 130 (4th Cir. 1957); *Gerhard v. Travelers Fire Ins. Co.*, 246 Wis. 625, 18 N.W.2d 336 (1945). We can see no reason for treating a windborne virus differently from other windborne objects.

Additionally, where a virus has been transmitted by means of a covered peril, the covered peril has been held to be the proximate cause of the loss. In *Qualls v. Farm Bureau Mutual Insurance Company*, 184 N.W.2d 710 (Iowa 1971), 14 heifers owned by the insured died of pseudorabies transmitted by wild animals which had attacked the heifers. The Iowa Supreme Court held that the attack, a covered peril, was the proximate cause of the loss and declared that under the parties' contract of insurance, the insurer was liable for the loss.

The court in *Qualls* stated:

> We are satisfied the word "attack" as used in the instant insurance agreement clearly extended to those results

which were proximately caused thereby and, regardless of the seriousness or extent of the attack, any bite which was found to infect the livestock with a serious disease is included in the liability assumed under the contract. There was no provision in the contract which restricted the loss to violence causing the death of the animals.

184 N.W.2d at 712.

*Qualls* is analogous to this case. Like the attack in *Qualls*, the windstorm was the dominant, efficient cause which set the virus in motion. The virus was merely a concurring cause. The windstorm was not, as defendant contends, a prior condition which merely made the cattle susceptible to infection. The windstorm carried the virus to plaintiff's farm, just as the wild animals did in *Qualls*. Absent the windstorm, there would have been no infection of plaintiff's swine. The presence of the virus downwind was the prior condition. The windstorm was the proximate cause, and therefore the direct cause, of plaintiff's loss in the instant case. Infectious diseases were not an exclusion.

The insurance contract provides that the insurer is liable for loss directly caused by a covered peril. Windstorm is a covered peril. Since the March 13, 1990, windstorm directly caused the harm to plaintiff's swine, the district court properly determined that defendant was liable.

## MITIGATION EXPENSES

Defendant's other assignments of error concern whether plaintiff should be reimbursed for those expenses incurred in fulfilling its contractual duty to protect the property from further damage.

With respect to the insured's duties after a loss, the insurance policy provides, in pertinent part, the following:

3. WHAT *YOU* MUST DO AFTER A LOSS.

In the event of a loss to which this insurance may apply *you* shall see that the following duties are performed:

. . . .

b. PROTECT THE PROPERTY FROM FURTHER DAMAGE. This includes making reasonable and necessary repairs to protect the property, and keeping

accurate records of repair expenses.

It is clear that under the terms of the insurance contract, plaintiff had a duty to mitigate the damage. Although the language quoted above requiring the insured to keep accurate records of repair expenses suggests the insurer must reimburse the insured for those expenses, the contract does not expressly state whether the insurer is liable for the mitigation expenses. Notwithstanding the lack of an express statement, we have previously held that a trial court properly refused to instruct a jury that mitigation expenses were not recoverable as damages in an action on an insurance policy. *Hoagland & Co. v. Insurance Co.*, 131 Neb. 105, 267 N.W. 239 (1936).

In *Hoagland & Co.*, a windstorm destroyed the insured's lumber shed and part of the lumber stored therein. After the storm, the insured went to the expense of sorting, removing, and repiling the salvageable lumber in another shed. The insurer denied liability for these expenses and contended that the jury should be instructed that these expenses were not recoverable as damages. This court stated:

> It was necessary to assort the lumber to ascertain and separate the damaged from the undamaged portions. It was also essential that the lumber not damaged should be removed and repiled in another shed to preserve it from damage from the elements. This was made necessary as a direct result of the windstorm, and we think it was a recoverable element of damage.

131 Neb. at 111–12, 267 N.W. at 242.

Implicit in our decision rejecting the proposed instruction is the rule that expenses necessarily incurred in the course of mitigating damages are recoverable by an insured. See, also, *Slay Warehousing Co., Inc. v. Reliance Ins. Co.*, 471 F.2d 1364 (8th Cir. 1973); *Travelers Indemnity Co. v. Pollard Friendly Ford Co.*, 512 S.W.2d 375 (Tex. Civ. App. 1974); and *City Coal & Supply Co. v. Ins. Co.*, 99 Ohio App. 368, 133 N.E.2d 415 (1954) (all holding that the insurer must reimburse the insured for expenses necessarily incurred in the course of mitigating damages).

The expenses to which defendant objects are the veterinarian fees expended to prevent the death of the swine and the refunds

made by plaintiff to purchasers of infected swine.

With respect to the veterinarian fees, defendant contends that since the policy provides that losses shall be settled at actual cash value at the time of loss, the veterinarian fees are not recoverable. Defendant's argument merely begs the question of whether the veterinarian fees are a covered loss. As explained above, if the fees were necessarily incurred to mitigate the amount of damages, they are recoverable. The only evidence is that without treatment the animals would have died and the insurer would have been required to cover a greater loss. We therefore conclude that the veterinarian fees were necessarily incurred to mitigate damages. The district court properly included the veterinarian fees when calculating the damages.

Defendant contends the district court erred in including as damages the refunds plaintiff paid to purchasers of plaintiff's infected swine. Defendant submits that plaintiff is attempting to recover under the liability coverage of the insurance contract and that since the policy expressly excludes goods sold from coverage by the insured, there is no coverage. Defendant does not dispute that in losing the breeding value of the swine, plaintiff sustained a physical loss. Defendant does not dispute that the swine which were subsequently sold had been owned by plaintiff on the date of the windstorm. As explained above, defendant is liable under the property coverage of the insurance contract for the physical loss plaintiff sustained due to the windstorm. That plaintiff did not financially realize the loss until a later date does not affect the policy coverage or the nature of the loss. Since defendant stipulated to the amount plaintiff refunded purchasers for the loss in value of the swine sold, and since defendant is liable under the insurance policy for the loss in value, the district court properly included the refunds made to purchasers of the infected swine when computing the damages in this case.

Also before us is plaintiff's motion for attorney fees. Pursuant to Neb. Rev. Stat. § 44-359 (Reissue 1993), plaintiff is awarded attorney fees in the amount of $8,373.

AFFIRMED.