LEMMON, Judge.
This is an action to recover the proceeds allegedly due under the accidental death benefit provision of two life insurance policies which insured the life of Louis Pick and named plaintiff, his widow, as beneficiary. The trial court dismissed plaintiff’s suit after a trial on the merits, and she appealed. The issue on appeal is whether she sustained her burden of proving her husband’s death was accidental.
I
Shortly before his death the insured was driving a three-month old Cadillac automobile on a clear, dry day on Tulane Avenue, near the intersection of Jefferson Davis Parkway, in New Orleans.
An eyewitness, who was driving east on Jefferson Davis, testified: He saw an apparently driverless Cadillac heading north across the southbound lanes of Tulane. (The Cadillac had apparently been in the northbound lane and crossed the narrow neutral ground of Tulane, where it struck and knocked down a small palm tree.) The Cadillac proceeded across the eastbound lanes of Jefferson Davis at a speed of about 10 to 15 miles per hour and, without swerving or slowing, struck the right front of the ear in front of him with a slight impact. He found Mr. Pick slumped on the front seat of the Cadillac, pale, convulsive and gasping for breath.
After the collision Mr. Pick was taken to the hospital, where attempts at resuscitation were unsuccessful.
The cost of repairing the Cadillac was $1,707.62, and the repairman found no defects in the braking and steering systems, except for a minor damage to the strut arm which he attributed to the collision. The other car sustained damage of about $200.00.
Dr. McGarry, the pathologist who performed the autopsy on plaintiff’s 55-year old husband, classified the death as “natural”, caused by a dissecting aneurysm (enlargement of blood vessel which ultimately ruptures) of the aorta (the main artery from the heart) with hemopericardium (blood in the sac surrounding the heart). He opined that the dissecting aneurysm was the type that occurs in a spontaneous hemorrhage in the aorta, and not the type that results from trauma, basing his conclusion primarily on the location of the aneurysm. He also found several fractured ribs, but described them as the type that frequently occur during resuscitation, rather than the type that occur in automobile collisions.
Dr. Rosenberg, a cardiovascular surgeon presented by defendants, stated that a dissecting aneurysm which ruptures into the pericardium (as occurred in this case) leads to sudden death, whereas when an aneurysm reruptures back into the aorta, the symptoms may go on for a period of time, even for weeks. He further observed that a traumatic aneurysm can be distinguished from a spontaneous one, since a dissecting aneurysm which is located in the beginning or ascending portion of the aorta (as this one was) occurs spontaneously with no known cause, while an aneurysm caused by trauma always occurs in the descending third of the aorta. On cross examination he admitted that external pressure to the chest could aggravate an existing tear in the aortic wall, but added that the force would have to be considerable, such as that associated with a high speed automobile collision.
Dr. Schenthal, an expert in cardiology who had been treating Mr. Pick for pulmonary disease, testified he found no indication of an aneurysm or of any heart disease in an examination on the day before Mr. Pick’s death. He further testified, however, that aneurysms in the ascending part of the Aorta occur spontaneously rather than traumatically and are typically accompanied by loss of consciousness, because of the cutting off of the blood supply to the brain. He further conceded that traumatic aneurysms are typically associated with shearing action, such as occurs in a high speed crash. Finally, he opined that this aneurysm occurred spontaneously while the patient was driving and before the collision.
*775 Dr. Leon, a general surgeon who had previously treated Mr. Pick, examined the records and concluded that the aneurysm could “be either trauma or spontaneous”, noting the fact of the accident and the fracturing of ribs as evidence of the former and finding of arteriosclerosis in the autopsy report as an indication of the latter.
II
Pointing out that Mr. Pick had no previous symptoms of an aneurysm and died contemporaneously with an automobile accident, plaintiff argues that since it was medically impossible to determine with certainty whether the death was caused by the accident or by a spontaneous occurrence, the evidence preponderates in favor of a conclusion that the death was accidental.
It was plaintiff’s burden to prove, by a preponderance of the evidence, that the death fell within the coverage of the life insurance policies. This burden may be met with circumstantial evidence, but the evidence (direct or circumstantial) constitutes a preponderance only if the proof taken as a whole shows that the fact or causation sought to be proved is more probable than not. Boudreaux v. American Ins. Co., 262 La. 721, 264 So.2d 621 (1972); Hanover Ins. Co. v. Jacobson-Young, Inc., 294 So.2d 564 (La.App. 4th Cir. 1974).
In the present case there was considerable competent evidence that this type of aneurysm is never caused by trauma and results in sudden death. Even the testimony of the witness most favorable to plaintiff (Dr. Leon) indicates it was at least equally probable that the aneurysm occurred spontaneously, without any relationship to the trauma of the collision. Furthermore, Mr. Pick’s sudden loss of control of his vehicle, without any apparent reason, raises the inference that loss of consciousness (which can be caused by a spontaneous dissecting) preceding the loss of control and, therefore, that the aneurysm which caused Mr. Pick’s death preceded the accident.
The fact that the case was difficult to prove does not lessen plaintiff’s burden of proof, and she has simply failed to discharge that burden.
The judgment is affirmed.

AFFIRMED.