JASPER E. JONES, Judge.
This is an action to recover benefits under the accidental death provisions of seven insurance policies insuring the life of Michael Edward Lohan, Sr. After a trial on the merits the district judge rendered judgment in favor of Mrs. Genevieve Feeney Lohan, widow of the insured and the designated beneficiary on all seven policies for a total of $74,250.00. The defendants appeal and we affirm.
The defendants are Mutual of Omaha Insurance Company, Mutual Benefit Health & Accident Insurance Company, and United Benefit Life Insurance Company. Mutual of Omaha had issued five policies insuring the decedent against accidental death for a total sum of $68,250.00. Mutual Benefit had issued one policy insuring the decedent against accidental death for the sum of $5,500.00. United Benefit had issued one policy for $500.00 to decedent providing him with the same coverage. *367 All of these policies provide coverage only where the insured suffers “accidental bodily injuries” resulting in death “independently of other causes.”
The issues on this appeal are factual in nature and, for that reason, require the detailed review of the facts which follows.
The decedent, Michael Edward Lohan, Sr., age 84, disappeared on January 23, 1978. Mr. Lohan resided in Monroe, Louisiana, with his wife and his son.
Mr. Lohan’s son was employed at a warehouse in Monroe but was not a licensed driver. Mr. Lohan assisted his son by driving him to and from work. Mr. Lohan also drove his son to perform any necessary errands. On January 23, 1978, Mr. Lohan was to pick up his son at work at 3:30 p.m. and take him to a dental appointment.
The evidence reflects that January 23, 1978, was a cold day with a light rain. Mr. Lohan left his home shortly after 3:00 p.m. that afternoon to pick up his son but he never arrived at his son’s place of employment to pick up his son nor was he ever seen alive again.
When Mr. Lohan did not appear to pick up his son it was cause for concern because he was normally extremely punctual. The authorities were alerted and police officers drove all the expected routes between the Lohan home and Mike Lohan’s place of employment. However, no sign of Mr. Lo-han or his car was discovered.
Mr. Lohan’s whereabouts remained a mystery until April 16, 1978. On that day a fisherman who was using the Forsythe boat launching ramp thought he found something submerged in the Ouachita River and called a friend who was a member of the Ouachita Parish Sheriff’s Department. The two men went to the location of the object in a boat and by feeling it with their hands and boat paddles concluded it was a car.
A diver from the Monroe City Police Department was summoned. The diver entered the water and determined the object was a car and that it probably contained a body. A wrecker was then brought to the scene.
The car was submerged in the water upon the launching ramp thirty to forty feet from the existing water line. As the vehicle rested on the bottom it was right side up and facing in a northeasterly direction. (If the vehicle had been facing straight out from the ramp it would have faced toward the south.)
The diver re-entered the river and attached the tow cable of the wrecker to the left front bumper of the car. The car was then pulled from the river with some difficulty. This was determined to have been caused by the transmission being in park and by the weight of the water in the vehicle. When the car was removed from the water the badly decomposed body came to rest draped across the front seat.
The car was determined to be the vehicle belonging to Mr. Lohan and the body was also identified by identification contained in the wallet found on it as Mr. Lohan.
The car was examined after it was pulled from the river and it was determined that the ignition switch was on as were the heater, windshield wiper and headlight switches. The window cranks were in the up position and the transmission gear shift was in the park position.
An autopsy was performed upon the body of Mr. Lohan. Due to the decomposed state of the body the autopsy was not very revealing. Slides were made of lung tissue, heart tissue and of coronary arteries.
Studies of the heart tissue showed scar tissue from an old myocardial infarction. Studies of the slides of the arteries showed severe arteriosclerosis and occlusion of these arteries. However, the record reveals that these findings in Mr. Lohan’s heart would have been present no matter what caused his death.
The record contains no evidence that Mr. Lohan had been the victim of foul play or suicide. The plaintiffs contend Mr. Lohan died either of drowning or of a heart attack precipitated by his exposure to the cold *368 river water or by his fright over his situation. The defendants contend Mr. Lohan died of a “sudden death” heart attack[1] secondary to his abovementioned heart disease and they further contend his death occurred as he drove through the boat ramp parking lot.
Death by either drowning or heart attack occurring in the manner contended by plaintiffs would be accidental within the coverage of the insurance policies sued upon. Cf. Thibodeaux v. Pacific Mutual Life Insurance Co., 237 La. 722, 112 So.2d 423 (1959) (Where insured has dormant condition which is awakened by an accident the condition is not deemed to be the cause of the loss); Richard v. Southern Farm Bureau Casualty Ins. Co., 128 So.2d 806 (La.App. 3d Cir.1961) (Fatal heart attack resulting from auto accident acting on pre-exist-ing high blood pressure was covered by policy). However, death by a naturally occurring sudden death heart attack, as postulated by defendants, would not be covered. Pick v. Metropolitan Life Ins. Co., 372 So.2d 773 (La.App. 4th Cir.1979).
It is the plaintiffs’ burden to prove by a preponderance of the evidence that an accident was the predominate cause of death in order to recover under the policies. Carnes v. Continental Casualty Co., 212 So.2d 441 (La.App. 2d Cir.1968).
The district judge gave excellent written reasons for judgment. In those reasons the trial judge indicated that he was particularly impressed by the fact that the transmission of the Lohan vehicle was in park when it was removed from the river. The district judge found “... the evidence preponderates that his [Mr. Lohan’s] submergence in the cold water set in motion his latent heart disease which resulted in a sudden cardiac death.” [2]
Defendants made two assignments of error on appeal. First, they contend the trial judge erred in overlooking reasonable inferences arising from undisputed testimony. Second, they contend that the trial judge erred in concluding plaintiffs had borne their burden of proof. These assignments will be treated together because of their relationship and factual nature.
Defendants argue that the normal “manifest error” rule of appellate review of facts does not apply here because the trial judge overlooked reasonable inferences from undisputed testimony. See Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). Defendants contend that the trial judge erred by not inferring from the testimony of its expert witnesses, that the Lo-han vehicle drove onto the ramp and the driver did not take any of several suggested evasive actions; that Mr. Lohan did not consciously drive onto the ramp and that he was dead of a “sudden death” heart attack when his vehicle went into the river.
In support of this argument appellants rely on the rule that an appellate court is not required by the manifest error rule to affirm a trier of fact’s refusal to accept as credible, uncontradicted testimony or greatly preponderant objectively corroborated testimony where the record indicates that there was no sound reason for the rejection and where the finding was reached by overlooking applicable legal principles. McCoy v. Franklin Parish Police Jury, 414 So.2d 1369 (La.App. 2d Cir.1982). Appellants’ reliance on this rule is misplaced because here the record indicates sound reasons, referred to by the trial judge in his reasons for judgment, to reject the inferences which defendants contend should have been drawn.
The inferences which defendants have suggested are not made from facts proven by the testimony of witnesses who saw the accident. Instead, they are inferences to be drawn from facts inferred by their experts to exist from the one established fact that the Lohan vehicle came to rest in the river. These inferences virtually ignore *369 the additional established facts that the transmission of the vehicle was in park and that the only probable way for it to get into that position was by the conscious manipulation of Mr. Lohan.
Defendants have suggested two other possible explanations for the fact that the auto was in park. First, they suggest that the transmission could have been moved into park by Mr. Lohan’s dead body striking the steering wheel and transmission lever when the car entered the water. Second, they suggest that the transmission could have been moved into park by the action of the dead body as it floated inside the car.
At trial extensive evidence was presented concerning the operation of the Lohan vehicles’ transmission.' The evidence establishes that, in order to shift the transmission from drive to park, the gearshift lever must first be pulled toward the driver’s seat, then rotated upwards or counterclockwise and finally released.
Defendants’ suggestion that the transmission might have been knocked into park by the body when the car struck the water is negated by the testimony of their own expert witness, Dr. Petty, who testified:
Q. All right, sir. There was no evidence that the body had struck the steering wheel, was there?
A. No.
Q. There was no evidence that the body had struck or bent the gear shift lever, was there?
A. No, not at all.
Q. There was no evidence that the body knocked the gear shift lever into park, was there?
A. No, not at all. (R. p. 571)
The suggestion that the transmission might have been moved into park by the body as it floated in the car is also unimpressive. The great weight of the evidence concerning the operation of the transmission and the testimony of Dr. Najeeb Klam, plaintiff’s expert pathologist, shows that this is no more than a very remote possibility.
To prove a claim in a civil case by circumstantial evidence the evidence need not negate all other possible causes of injury and it is sufficient if the circumstantial proof excludes other reasonable hypothesis with only a fair amount of certainty. Boudreaux v. American Insurance Company, 262 La. 721, 264 So.2d 621 (1972); Vonner v. State Department of Public Welfare, 273 So.2d 252 (La.1973). The proof in this case establishes that the only reasonable hypothesis to explain the fact that the transmission of the Lohan vehicle was in park is that Mr. Lohan shifted it there about the time he entered the water. The defendants’ suggested explanations are no more than mere possibilities.
For the foregoing reasons ,we find the assignments of error to be without merit. The record more than adequately supports the trial judge’s finding that the plaintiff’s case was proved by a preponderance of the evidence. The judgment of the district court is AFFIRMED at appellants’ costs.

. A “sudden death" heart attack would have resulted in the loss of consciousness and death within only a few seconds of its onset.

. All the medical evidence established that the cold water would be likely to cause Mr. Lohan to have a sudden death heart attack.